IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Stanley Johnson, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>Time Warner Entertainment-Advance/ Newhouse Partnership d/b/a/ Time Warner Cable, and Time Warner Cable Southeast LLC d/b/a Time Warner Cable,<br><br>   Defendants. | C/A No. 3:15-cv-01727-CMC<br><br><br>Opinion and Order<br>Denying Second Motion<br>for Summary Judgment (ECF No.109) |

This matter is before the court on Defendants' Third Motion for Summary Judgment (ECF No. 109). For the reasons set forth below, the motion is denied.[1]

**BACKGROUND**

As explained in the order denying Defendants' Second Motion for Summary Judgment:

> Through this action, Plaintiff Stanley Johnson ("Johnson"), seeks recovery on behalf of himself and others similarly situated for alleged unauthorized placement of cable transmission lines and related equipment ("Cable Lines") on or under land he purchased on July 1, 2014. . . . Relief is sought under various legal theories, all of which depend on the dual premises that (1) Defendants Time Warner Entertainment Advance/Newhouse Partnership and Time Warner Cable Southeast, LLC (collectively "Time Warner Cable"), or their predecessors in interest, placed the Cable Lines on or under the Property without authorization prior to Johnson's

---

[1] This is Defendants' third motion for summary judgment. Defendants filed their first motion for summary judgment on August 6, 2015. ECF No. 70. That motion was denied without prejudice to renewal after discovery on specified issues germane to Plaintiff's individual claims. *See* ECF No. 82. After discovery on the specified issues, Defendants filed their second (or renewed first) motion for summary judgment on November 12, 2015. ECF No. 90 ("Second Motion for Summary Judgment"). That motion was denied by order entered January 25, 2016. ECF No. 102. The present motion was filed following additional discovery germane to Plaintiff's individual claims. ECF No. 109.

>  purchase and (2) the Cable Lines remained on the property without authorization after Johnson's purchase.
>
>  For purposes of this order, the court distinguishes between two types of lines: "Trunk Lines," which are capable of carrying signals to multiple subscribers; and "Service Lines," which carry the signal from the Trunk Line[s] to an individual subscriber's residence or other individual location. Johnson's challenge is primarily if not exclusively directed to the presence of Trunk Lines running over (and possibly under) his property.

ECF No. 102 at 1-2 (footnote omitted).

Time Warner Cable's Second Motion for Summary Judgment advanced two related theories: (1) "placement of the lines was authorized because service was requested by and provided to a tenant [("Tenant")] of the property," with the landowner's consent, from roughly 1994 to 2002; and (2) the cable service provider was not required to remove the lines after service ended until a reasonable time after the landowner objected to the continued presence of the lines (which request was made by Johnson in early 2015). *Id.* at 2-3 (summarizing opening arguments). On reply in support of that motion, Time Warner Cable appeared to concede Trunk Lines serving other properties were present on the Property before Tenant requested service in 1994. It, nonetheless, argued the earlier presence was irrelevant because Johnson may not assert a claim for any pre-1994 trespass and the lines were present by permission thereafter (based on Tenant's request for service with landowner's consent) until Johnson objected to their presence. *Id.* at 4. It also pointed to an "absence of evidence that the original placement was non-permissive." *Id.* at 5. Finally, Time Warner Cable argued Johnson's position as to absence of authority predating 1994 was 'self-defeating because a twenty-plus year trespass would establish an easement by prescription which ripened prior to Johnson's purchase" in 2014. *Id.* at 5.

The court found Time Warner Cable's opening arguments ineffective, despite a number of favorable assumptions, because they focused on authorization of Trunk and Service Lines

2

necessary to provide service to Tenant's residence, rather than Trunk Lines necessary to provide service to customers downstream of the Property. *Id*. at 6-7.[2] Noting the absence of "authority for [Time Warner Cable's] specific premise that Tenant's request for service authorized placement or presence of Trunk Lines for the purpose of *serving downstream customers*[,]" the court held it could not "find that Time Warner Cable is entitled to judgment as a matter of law on this point or the dependent argument that Time Warner Cable could not be required to remove previously authorized lines without being given a reasonable time to relocate the lines." *Id.* at 7 (emphasis in original)).

The court declined to consider Time Warner Cable's reply arguments on the merits for two reasons. First, those arguments were not raised until reply and, second, they addressed issues beyond the scope of the limited discovery that had been allowed. *Id.* at 8 (addressing arguments Johnson had failed to adduce evidence that placement of lines prior to 1994 was unauthorized or, alternatively, that Time Warner Cable was entitled to an easement by prescription and noting "[d]iscovery to date has . . . been limited, in part by the court's oral ruling on Time Warner Cable's original motion for summary judgment and in part by Time Warner Cable's discovery responses suggesting Time Warner Cable was relying on Tenant's authorization rather than an absence of

---

[2] The court assumed without deciding:
> (1) Tenant's request for service was sufficient to authorize such lines as were necessary to provide service to Tenant's residence, which might include Trunk Lines to the point where Tenant's Service Line connected; (2) Tenant's authorization would be effective going forward, even if the Cable Lines were unauthorized prior to his request for service; (3) Time Warner Cable was not required to remove any previously authorized lines upon termination of service unless and until Tenant or property owner requested removal; and (4) once removal was requested, Time Warner Cable was allowed a reasonable time to complete the removal of previously authorized lines.

ECF No. 102 at 6.

3

evidence as to whether the initial placement was authorized."). As to the issue of authorization, the court noted possible inferences favorable to Johnson that might arise from the absence of certain evidence or Time Warner Cable and its predecessor's practices regarding easements. *Id.* As to the issue of prescriptive easement, the court noted factual and legal issues requiring further development. *Id.* at 9 (noting "discovery may be needed as to whether there have been changes in the physical cables or nature and extent of usage of those cables over the relevant period as well as legal argument on the impact of any such changes on the existence and scope of a prescriptive easement.").

## DISCUSSION

### I.   MOTION FOR SUMMARY JUDGMENT

Time Warner Cable now seeks summary judgment on two grounds similar to those raised in its reply in support of its Second Motion for Summary Judgment. First, it argues Johnson has failed to adduce evidence "that the prior landowner did not acquiesce in the presence of cable infrastructure on the property[.]" ECF No. 109-1 at 1 (addressing what it characterizes as common element of all claims). Second, it argues "the uncontroverted record establishes Time Warner Cable's entitlement to a prescriptive easement because it constructed its facilities in the early 1980's based on a belief that it had the right to piggyback on utility easements." *Id.* at 2.

#### A.   STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc*., 53 F.3d 55, 62 (4th Cir. 1995).

### B.    FAILURE TO ADDUCE EVIDENCE OF NON ACQUIESCENCE

**Time Warner Cable's Opening Argument.** In its opening brief, Time Warner Cable notes Johnson has the burden of proving the presence of lines "was *non-permissive* from the standpoint of his predecessor in title." ECF No. 190-1 at 10 (emphasis added). It then argues Johnson has "not adduced any evidence from which the finder of fact could conclude that the prior landowners *did not acquiesce* in the presence of the cable facilities on the property[,]", despite having the opportunity for discovery on this issue. *Id..* at 11 (emphasis added).

In support of this argument, Time Warner Cable cites a South Carolina law treatise for the proposition "lack of permission is an essential element of a cause of action for trespass." *Id.* at 10 (citing SC Jurisprudence CIVIL § 4-41). It also cites a Texas decision for the premise a landowner bears the burden of proving lack of consent. *Id.* (citing *Envtl. Processing Sys. v. FPL Farming Ltd.*, 457 S.W.3d 414, 424 (Tex. 2015). In its introduction, Time Warner Cable cites two South Carolina cases requiring proof of unauthorized entry to establish trespass. *Id.* at 9-10 (citing *Ravan v. Greenville Cnty.*, 434 S.E.2d 296, 306 (S.C. Ct. App. 1993); *Willoughby v. Ne. R. Co.*, 11 S.E. 339, 347 (S.C. 1890)). Time Warner Cable does not, however, cite any authority for the more specific proposition that Johnson must prove *non-acquiescence* in order to establish the challenged entry was "unauthorized," or without permission or consent.[3]

**Johnson's Response.** In his response, Johnson agrees that "trespass will not lie where the landowner has granted permission." ECF No. 114 at 7. Characterizing Time Warner Cable's arguments as requiring him to "disprove speculation that a prior owner of the Property granted permission," Johnson points to "ample facts giving rise to a triable issue concerning non-permissive use." *Id.* He notes, inter alia, that the 1989 Pole Attachment Agreement between South Carolina Electric and Gas Company ("SCE&G") and Time Warner Cable's predecessor required the cable company to "secure any necessary consent" from landowners before attaching lines to SCE&G's poles. *Id.* at 7. Johnson also notes the absence of evidence of landowner consent to

---

[3] In a footnote to the introduction, Time Warner Cable states it has "not abandoned its additional arguments based on the establishment of service from 1994-2002[,]" though it is not advancing those arguments in this memorandum. *Id.* at 10 n.4. Though not expressly identified, these "additional arguments" are clearly the permissive-use arguments Time Warner Cable advanced in its Second Motion for Summary Judgment.

6

placement of Trunk Lines on the Property (to serve downstream customers), despite discovery requests for the same. *Id.* at 8-14.[4] Johnson points to evidence Time Warner Cable and its predecessors have presumed they had a right to piggyback on existing utility easements rather than seeking landowner consent despite notice that such consent was required in the very document that gave them the right to attach to SCE&G's poles. *Id.* at 11, 14. Johnson also argues that, by suggesting he must prove non-acquiescence, Time Warner Cable is impermissibly requiring him to "prove a negative." *Id.* at 15. Finally, he argues the evidence is sufficient to allow a jury to find Time Warner Cable and its predecessors' presence on the property was "non-permissive[,]" which is all he is required to prove. *Id.* at 15-18.

**Time Warner Cable's Reply.** On reply, Time Warner Cable concedes that discovery conducted after denial of its Second Motion for Summary Judgment is sufficient to allow "a jury to conclude that [Time Warner Cable's predecessor] did not receive express permission from the landowner in 1981." ECF No. 117 at 3 (stating it has never argued otherwise). It maintains, nonetheless, that this absence of express permission does not matter and that the "actual issue raised" is the absence of evidence the "prior landowners did not acquiesce in the continuous presence of the cable facilities on the property" despite their presence since 1981. *Id.*

---

[4] Johnson suggests there is an inconsistency between a concession defense counsel made in a prior hearing (that there were "no documents that show landowners signing off, giving permission . . . to attach to poles on [the] property") and Time Warner Cable's subsequent denial of requests to admit there is "no writing evidencing permission to use the Plaintiff's Property" and Time Warner Cable has "no records evidencing permission given by any owner . . . of what is now Plaintiff's Property." *Id.* at 8. The court does not find the statements inconsistent in light of Time Warner Cable's reliance on the service agreement with Tenant and Tenant's declaration regarding his authority as writings collectively evidencing the landowner's permission to place lines necessary to provide service to Tenant.

7

**Discussion.** To the extent it relates to Johnson's burden of proof as to the elements of his claims (all of which depend on a theory of trespass or unauthorized entry), Time Warner Cable's first argument is misplaced. What Johnson must prove is that placement of the Trunk Lines was not authorized, either at the time the lines were originally installed or at some later time predating Johnson's objection to their presence. As Time Warner Cable concedes, there is evidence from which a jury could conclude there was no express authority at the time of installation or thereafter.

There is also evidence from which a jury could find either an absence or existence of implied authority to install the Trunk Lines. For example, as the court noted in denying the Second Motion for Summary Judgment, the establishment of service to Tenant may be *some* evidence of implied permission to install whatever lines were necessary to provide that service, including a Trunk Line to the point where Tenant's Service Line attached, which implied permission may carry forward until a reasonable period after an objection was made. *See* ECF No. 102 at 7 n.8 (noting likely jury issue "[w]hether the time required to reroute the cable was reasonable[,]" assuming permissive use based on service to Tenant). On the other hand, it is "doubtful that Tenant's request for service, alone, could have authorized placement or presence of Trunk Lines serving downstream properties." *Id*. There are also jury issues regarding the inferences to be drawn from Time Warner Cable and its predecessors' practice of assuming the existence of an easement despite contrary terms in Pole Attachment Agreements ("PAA") with SCE&G. *See infra* Prescriptive Easement Defense, Third Element (noting Time Warner Cable's reliance on "assumed easements" or "pretense" of an easement, regardless of the language in the PAA, may support jury finding that it did not act under a claim of right). Collectively, the disputed evidence and inferences to be drawn from the evidence (or lack of evidence) preclude summary judgment on the issue of implied authority.

8

Finally, Time Warner Cable has pointed to no authority, and the court is aware of none, that would require Johnson to prove "non-acquiescence" in order to prove the lines were placed and remained without authority or consent. While acquiescence may be relevant to Time Warner Cable's prescriptive easement defense (which requires proof as to a twenty-year period), non-acquiesence is not something Johnson must prove to establish his claims. To hold otherwise would be to engraft an additional element (one that looks very much like an element of a prescriptive easement defense) onto a trespass and related claims. Time Warner Cable's first argument for summary judgment, therefore, fails.

### C.     PRESCRIPTIVE EASEMENT DEFENSE

Time Warner Cable's second argument is that it has established a prescriptive easement as a matter of law.[5] To establish this defense, Time Warner Cable must prove the following elements by clear and convincing evidence: "(1) the continued and uninterrupted use or enjoyment of a right for a full period of twenty years; (2) the identity of the thing enjoyed; and (3) that the use [or enjoyment] was adverse or under a claim of right." ECF No. 117 at 4 (reply brief) (quoting *Jones v. Daley*, 609 S.E.2d 597, 599-600 (S.C. Ct. App. 2005)). While there is evidence to support this defense, that evidence is not so clear as to support summary judgment.

**First Element: Continuous and uninterrupted use for a period of twenty years.** Evidence adduced following entry of the order denying Time Warner Cable's Second Motion for Summary Judgment indicates the Trunk Line crossing Johnson's property was installed in or

---

[5] Time Warner Cable advances this argument as a defense, rather than as an affirmative counterclaim.

around 1981.[6] An "Amplifier" and related "Multi-Party Backfeed Lines" have been in place for roughly the same period of time.[7] There appears to be little if any dispute that these lines and equipment have been in place in one form or another long enough to satisfy the first element of a prescriptive easement claim or defense. The court, therefore, assumes for present purposes that this element is satisfied.

**Second Element:  Identity of the thing enjoyed.** The second element is, however, in dispute. Time Warner Cable concedes that its use has changed in at least two ways during the prescriptive easement period. First, the use of the claimed prescriptive easement has "evolved" from delivery of cable television signal to include both telephone and internet services. Second, the Multi-Party Backfeed line (as well as the Tenant's Service Line) have been replaced with a different type cable. It is unclear precisely when these changes occurred, though there is no claim

---

[6] This evidence consists of a request for and grant of permission to cross a railroad line downstream of the Property. It appears to be undisputed that the original cable lines would have been installed soon after this permission was given.

[7] As the court understands the technology, the signal carried by a Trunk Line must pass through an Amplifier before being delivered to Time Warner Cable's customers. The lines between the Amplifier and customers are referred to as Backfeed Lines. To distinguish those Backfeed Lines serving multiple customers and the portion installed solely to serve Tenant, the court refers to the former as "Multi-Party Backfeed Lines" and the latter as "Tenant's Service Line." Johnson's property is burdened by (1) an aerial Trunk Line that runs roughly North to South along the Old Garners Ferry Road side of Johnson's Property and is attached to two SCE&G poles located on the Property; (2) a short underground segment of Trunk Line running from the pole near the South end of the property to the edge of the property and continuing on to provide service to downstream customers; (3) an Amplifier attached to an SCE&G pole near the South end of the property, (4) an aerial Multi-Party Backfeed Line (running roughly South to North) along the same poles and continuing beyond the property to serve several customers (including, at one time, Tenant), and (5) Tenant's Service Line, running from the Multi-Party Backfeed Line to the location of the Tenant's former residence on the Property (mostly underground).

they occurred sufficiently long ago to independently support a prescriptive easement defense without sharing an "identity" with the original installation.

Time Warner Cable argues it satisfies the second element as a matter of law despite these changes because they do not constitute the sort of change that would support a finding of change of identity of the thing enjoyed. In support of this argument, Time Warner Cable relies on two South Carolina cases involving public easements for highway purposes. *See* ECF No. 109-1 at 16-17 (discussing *Lay v. State Rural Electrification Auth.*, 188 S.E. 368 (S.C. 1936), and *Leppard v. Central Carolina Tel. Co.*, 30 S.E.2d 755 (S.C. 1944)); ECF No. 117 at 4-5 (same).[8] In both cases, the court construed the easements broadly to allow placement of electric (*Lay*) and telephone (*Leppard*) lines in the public highway right of way, even though the particular use might not have been contemplated at the time the easements were given. *Leppard*, 30 S.E.2d at 757-58 (holding "the grant or a condemnation of a public street or highway must be presumed to have been made not for such purposes and usages only as were known to the landowner at the time of the grant, but for all public purposes, present and prospective, consistent with its character as a public highway, and not detrimental to the abutting real estate"); *Lay*, 188 S.E. at 370 (holding "in the light of modern invention and modern progress[,] . . . the use by the [Electrification Authority] of the highways for its transmission lines under the act of the Legislature is not an additional

---

[8] *Leppard* addressed a "public easement" conveying an "unqualified right of way for the construction of a state highway." *Leppard*, 30 S.E.2d at 756. *Lay* addressed "an easement to the state for highway purposes." *Lay*, 188 S.E. at 368.

11

servitude, and . . . does not constitute a taking of private property for public use without just compensation").[9]

Johnson, in contrast, relies on *Gressette v. South Carolina Electric & Gas Co.*, 635 S.E.2d 538 (S.C. 2006), which remanded a class action challenging alienation of easement rights for consideration of the specific language in the underlying, written easements. *See* ECF No. 114 at 19-20. The easements at issue granted SCE&G "the right to construct, operate, and maintain electric transmission lines and all telegraph and telephone lines . . . *necessary or convenient in connection therewith*." *Id.* at 539 (quoting easement, emphasis in *Gressette*). The class action challenged SCE&G's sale of excess capacity on fiber optic lines to third parties. The class did not challenge either SCE&G's right to install the fiber optic cable or its right to use that cable for its own communications purposes. It challenged only the sale of excess capacity to third parties who would be using the communications lines for something other than communications "in connection" with electric transmission. The court found this distinction sufficient to require further consideration of the impact of the limiting language.

*Gressette* is not only more recent, but more on point as it involved a private easement allowing for a specific use and an alienation with minor modification. The nature of the alienated

---

[9] Time Warner Cable also relies on decisions from other states and the Restatement (Third) of Property: Servitudes § 4.10 (2000). ECF No. 117 at 5 (quoting Restatement for propositions easements will continue, despite changes in function or use, where there is "no physical change in the use of the easement" or the physical change imposes no greater burden on the landowner, and suggesting the same rule applies to prescriptive easements). While the authority on which Time Warner Cable relies may state the majority rule, it does not necessarily reflect the rule accepted in South Carolina, which the court concludes favors a narrower interpretation of prescriptive easements for reasons discussed below.

12

use (general communications) was very similar to the permitted use (communications in connection with electrical transmission) and, presumably, imposed no greater burden on the landowner.[10]

While not directly on point, *Gressette* suggests the South Carolina Supreme Court would follow a similar course when construing the second element of a claim for prescriptive easement (identity of the thing enjoyed). To do otherwise would give greater breadth to a prescriptive easement than a written easement. The very nature of a prescriptive easement, which is in derogation of property rights and requires proof of each element by clear and convincing evidence, suggests the state court would construe prescriptive easements at least as narrowly as written easements. At the least, the issue is one involving an open issue of state law that should not be resolved on anything less than a fully developed record.

**Third Element: Use that was adverse or under a claim of right.**

The third element may be established by proving "either a justifiable claim of right or adverse and hostile use." *Jones v. Daley*, 609 S.E.2d at 599-600. These two means of proof are not mutually exclusive. *See also Kelley v. Snyder*, 722 S.E.2d 813 (S.C. Ct. App. 2012) (finding use of property was both adverse and under a claim of right).

To establish a claim of right, claimant "must show a substantial belief that he had the right to use the property based on the totality of circumstances surrounding his use. . . . A claim of right is without recognition of the rights of the owner of the servient estate." *Paine Gayle Props., LLC, v. CSX Transp. Inc.*, 735 S.E.2d 528, 536-37 (S.C. Ct. App. 2012) (internal marks and citation

---

[10] Time Warner Cable does not address *Gressette*, either in its opening brief or on reply.

omitted).  A belief need not be correct to be substantial.  *See Loftis v. S.C. Elec. & Gas Co.*, 604 S.E.2d 714, 717 (S.C. Ct. App. 2004) (noting "very mistaken belief" may support claim of right).

Because a claim of right does not recognize the rights of the owner, permissive use (whether express, implied, or by license) cannot ripen into a prescriptive easement regardless of the length of the use.  *Id.*  (indicating same rule applies to claim of right and adverse use). Therefore, asking and obtaining permission from either the tenant or owner of the servient estate indicates the use is not adverse or under a claim of right.  *Id.*

A presumption of adverse use arises when claimant establishes the use was open, notorious, continuous and uninterrupted.  *Boyd v. BellSouth Tel. Tel. Co.*, 633 S.E.2d 136, 141 (S.C. 2006). If an adequate showing to raise this presumption is made, "the burden shifts to [the landowner] to rebut the presumption that the use was adverse."  *Kelley v. Snyder*, 722 S.E.2d at 819.  As noted above, use which is permissive is not adverse.  *See Paine Gayle Props.*, 735 S.E.2d at 537; *see also* Black's Law Dictionary (10th ed. 2014) (defining adverse use as "[a] use without license or permission").

**Claim of Right.**  As to Time Warner Cable's claim of right, a jury could find the claimed "belief" not to be substantial under the totality of the circumstances.  The court notes, in particular, that the cable lines in question were attached to SCE&G poles pursuant to two PAAs, both of which required the cable company to obtain permission from the landowner before attaching to the poles.  While two defense witnesses testified to a "belief" that the company could attach to SCE&G's poles without further permission, neither explains why that belief was reasonable in light of the language in the PAAs.  The testimony may, moreover, suggest either willful blindness or intentional disregard of the PAAs' limiting language rather than actual belief in the right.  For example, one witness stated "the company *took the position* that we had the right to put our cable

14

on the utility company's poles, period." *See* Tribshrany dep. at 18-19 (explaining he believed the cable company could attach to SCE&G's poles without permission from the landowner, despite language to the contrary in the PAA) (emphasis added). Another stated the cable company entered land to install cable "under the *pretense* that we had the right to be there" and characterized the right as an "assumed right-of-way." Walker dep. at 22-23 (emphasis added).[11]

The jury might also find Time Warner Cable's claim of right inconsistent with its argument that placement of cable was permissive during Tenant's use and thereafter until Johnson objected to the presence of the lines.[12] If the jury accepted this argument in full, it might defeat Johnson's claim for other reasons, but would be inconsistent with a claim of right (or adverse use). If the jury accepted it only in part, for example finding permissive use from 1994 when Tenant obtained service until early 2015 when Johnson first objected to the lines, there would be an insufficient period of non-permissive use to support prescriptive easement.

---

[11] Time Warner Cable also suggests its claimed belief was reasonable based on its understanding of the federal Cable Communications Policy Act of 1984, 47 U.S.C. § 541 ("Cable Act"), as supported by the Eleventh Circuit decision in *Centel Cable Television Co. v. Admiral's Cove Assocs.*, 835 F.2d 1359 (11th Cir. 1988), and the South Carolina Court of Appeals decision in *Timberlake Plantation Co. v. Cty. of Lexington*, 415 S.E.2d 824 *aff'd as modified*, 431 S.E.2d 573 (S.C. 1993). It, nonetheless, notes that the Fourth Circuit rejected the Eleventh Circuit's interpretation of the Cable Communications Policy Act in *Media Gen. Cable v. Sequoyah Condo. Council of Co-Owners*, 991 F.2d 1169 (4th Cir. 1993) (holding right of access under Cable Act is expressly limited to easements dedicated for public use). In light of the Fourth Circuit's decision in *Media Gen. Cable*, a jury could find any reliance on the Cable Act within this circuit reasonable, if at all, only from 1984 to 1993. Thus, it would not support the existence of a "substantial belief" in the right either at the time the lines were first installed or the full twenty years required for a prescriptive easement, at least not as a matter of law.

[12] While Time Warner Cable does not now advance that argument for purposes of summary judgment, neither has it abandoned the argument. *See supra* n.3 (addressing ECF No. 109-1 at 10 n.4).

For these reasons, the court finds disputed issues of fact and inferences to be drawn from the facts preclude a summary judgment finding for Time Warner Cable on this method of proving the third element of a prescriptive easement claim.

**Adverse Use.** While stronger, Time Warner Cable's adverse use argument is still not so strong as to support summary judgment. Certainly, there is evidence from which a jury could find that the alleged encroaching lines and related equipment were open and notorious from the time they were originally placed in or around 1981 until Johnson objected to them in 2015. This is particularly true as to the aerial cables and equipment and somewhat less so as to the limited portion of the Trunk Line that runs underground. This is, however, an issue the court finds inappropriate for summary judgment because a jury is the best authority for what a reasonable person would understand from the physical appearance of the cables or any additional "notice" that might flow from the relatively short time during which cables were being attached to poles on and run under one portion of the Property (on which the owner did not reside). While the court agrees there is no requirement that the lines be labeled either as television cable lines or as belonging to a particular entity, neither can it conclude as a matter of law that a reasonable person would have understood the lines present on the Property were not electrical lines.

## CONCLUSION

For reasons explained above, Time Warner Cable's Motion for Summary Judgment (ECF No. 109) is denied.

IT IS SO ORDERED.

                                                  s/ Cameron McGowan Currie
                                                  CAMERON MCGOWAN CURRIE
                                                  Senior United States District Judge

Columbia, South Carolina
July 5, 2016